IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STATEWIDE BONDING, INC.** | ) | |
| 4085 Chain Bridge Road, Suite 100 | ) | |
| Fairfax, VA, 22030, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| **U.S. DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY ("DHS")** | ) | |
| 245 Murray Lane, SW | ) | |
| Washington, D.C. 20528; | ) | |
| | ) | |
| **U.S. IMMIGRATION AND CUSTOMS** | ) | |
| **ENFORCEMENT ("ICE")** | ) | |
| 500 12th St., SW | ) | |
| Washington, D.C. 20536; | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| c/o William Barr, | ) | |
| Attorney General of the United States | ) | |
| 950 Pennsylvania Ave, NW | ) | |
| Washington, D.C. 20530; | ) | |
| | ) | |
| **KEVIN MCALEENAN**, in his individual | ) | |
| capacity as Acting Secretary of U.S. | ) | |
| Department of Homeland Security | ) | |
| ("DHS") | ) | |
| 245 Murray Lane, SW | ) | |
| Washington, D.C. 20528; | ) | |
| | ) | |
| **MATTHEW T. ALBENCE**, in his | ) | |
| individual capacity as Acting Director of | ) | |
| U.S. Immigration and Customs | ) | |
| Enforcement ("ICE") | ) | |
| 500 12th St., SW | ) | |
| Washington, D.C. 20536; | ) | |

```
                                          )
AND                                       )
                                          )
WILLIAM BARR, in his individual           )
capacity as Attorney General of the       )
United States                             )
950 Pennsylvania Ave, NW                  )
Washington, D.C. 20530;                   )
                                          )      JURY TRIAL DEMANDED
        Defendants.                       )
```

## COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Statewide brings this action based on the Defendants violating

relevant provisions of the Administrative Procedure Act ("APA") and violating

due process rights protected by the Fifth Amendment of the U.S. Constitution.

Plaintiff requests the following relief, *inter alia*:

1. Enjoin the Defendants from further declaring bond breaches based on a defective Notice to Appear, until the substantive legal issues in this case are resolved;

2. Enjoin the Defendants from further declaring bond breaches based on a defective Notice to Produce Alien, until the substantive legal issues in this case are resolved;

3. Declare Defendants' conduct a violation of due process and a violation of the APA; and

4. Order the subject bond invoices be cancelled due to Defendants' violation of due process and the APA.

## INTRODUCTION

### 1.

The Supreme Court has spoken: A Notice to Appear ("NTA") is legally defective when that same NTA fails to provide the subject immigrant with the time, place, and date where he or she is to appear for immigration proceedings. Pereira v. Sessions, 138 S. Ct. 2105, 2107 (2018). To the extent that these Defendants disagree with the Supreme Court applying fundamental cannons of statutory construction to the plain language to the subject NTAs—which are at issue in this case—Plaintiff reminds these Defendants of their own admission: "Federal law shall apply to the interpretation of the bond, and its terms shall be strictly construed." Simply put, the cannons of statutory construction applied by the Supreme Court in Pereira are federal law, and that law led the Supreme Court to invalidate the subject NTA on, essentially, due process grounds.

### 2.

To the extent that the subject bond agreement should be strictly construed, federal law also requires the agreement to be strictly construed *against the drafter*, these Defendants.

### 3.

In this case, the Defendants have violated Plaintiff's due process rights and as a direct and proximate cause of that violation, Defendants continue to cause

reputational harm to Plaintiff. Paying flawed invoices erroneously inflates fail rates, and these rates directly impact Plaintiff's ability to maintain relationships with sureties, because Plaintiff is deemed unreliable and thus not a viable business partner. Furthermore, fail rates are inextricable from DHS's ability to ensure that Plaintiff's cease writing business (bonds). 31 CFR § 223.17. All this occurs due to Defendants' violation of Plaintiff's due process rights.

4.

Here's how Defendants violate Plaintiff's due process rights: Defendants provide immigrants, who are in immigration proceedings, with an NTA, *once they are given bond*. The problem is that the NTA does not contain the date or time for appearances, and in many instances does not contain the place of appearance, either. With no specified date or time on their NTA, and in many cases, no specified place to appear, many of the immigrants naturally fail to appear. Therein lies the rub.

5.

Here, Plaintiff Statewide has secured bonds for thousands of immigrants while Mike Donovan acts as a guarantor/indemnitor of his company, Nexus Services, Inc, for each secured bond at issue in this case. If an immigrant does not appear, that failure to appear is considered a breach of bond, because the bond

that secured the immigrant's release – based on timely appearance in court – has been breached by failing to appear.

6.

When a bond is breached Plaintiff's fail rate goes up.  The rate of failure of the bonds, whether the breach cost is paid or not, increases the risk to the surety and decreases the surety's willingness to issue further bonds. Plaintiff is essentially being driven out of business because the government can literally stop Plaintiff from doing business based on the breached bonds. 31 U.S.C. § 9305 (denying surety corporations authority to issue bonds if a final order or judgment on a bond is not paid); 31 CFR § 223.17 (authorizing defendants to deny acceptance of bonds from companies for cause). To this Defendants say things like "they don't do that", but the issue is that Defendants have engaged in statutory, business reputation-crippling conduct and have the discretionary authority to continue engaging in said conduct, and Plaintiff suffers from, and are subject to, this harm—all because Defendants keep violating Plaintiff's due process rights.

7.

The problem is that Plaintiff should not suffer fail rates, reputational harm, and demands to cease all business writing due to bond breaches, when Defendants, themselves, are the reason for the bond breach (the subject

immigrant's failing to appear). There is simply no doubt that these Defendants failed to follow non-discretionary, statutory and constitutional requirements of providing the subject immigrants with a specified date, time, and location for their respective immigration hearings. The Supreme Court made this duty clear in <u>Pereira</u>, 138 S. Ct. 2105.

8.

Defendants will undoubtedly claim that they give Plaintiff an opportunity to cure the bonded immigrants' failure to appear, but in substance, legally speaking, Defendants are wrong. Foremost, Defendants never—prior to bond breach—provide Plaintiff with any specified date or time in which Plaintiff's immigrant client is supposed to appear. Only after the bond breach occurs do these Defendants send out a 'Notice to Produce Alien' to a specified location, at a specified date and time. But even here, said command to produce the subject immigrant is woefully defective, because inter alia, the command/notice is inadequate and thus unreasonable.

9.

Without question, the law requires notice to be reasonable under the factual circumstances of a particular case, especially in cases regarding due process rights. With Plaintiff's entire business and business reputation at stake— these Defendants many times provide a date, time and location to 'produce' an

immigrant who has breached bond a mere 16 or 17 days prior to the specified date and time. And if Plaintiff cannot do that, then their fail rate skyrockets and it are subject to commands to stop writing business.

10.

In sum, hundreds of Plaintiff's clients fail to appear because Defendants fail to (1) provide said person with a specified date, time, and location to appear in court, at the one time these Defendants actually can ensure that said immigrant receives a specified time and location, and to (2) provide Plaintiff with a specified date, time, and location that its clients are to appear in court, prior to a bond breach. Then, only after the subject immigrant fails to appear, these Defendants expect Plaintiff to find the person in less than 16 or 17 days (on other occasions, regarding bonds other than the bonds at issue in this case, many times less than 48 hours), or suffer the absolutely irreparable harm to reputation and the Plaintiff's very legal authority to operate.

## JURISDICTION

11.

This case arises under the Fifth Amendment to the United States Constitution; the Administrative Procedures Act (APA); and the Declaratory Judgment Act, *inter alia*. The court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331, 2202, 2201, and 5 U.S.C.A. § 702.

12.

Personal Jurisdiction is proper because Defendants transact business in this District and thus are subject to personal jurisdiction in this Court pursuant to, inter alia, Fed. R. Civ. P. 4.

**VENUE**

13.

Venue is proper under 28 U.S.C. § 1391 because at least one of the Defendants is subject to personal jurisdiction in this district with regards to this action.

**PARTIES**

14.

**Plaintiff Statewide Bonding, Inc. ("Statewide")** is a bonding company that issues criminal and immigration bonds throughout the United States.

15.

**Defendant U.S. Department of Homeland Security ("DHS")** has responsibility for enforcing the immigration laws of the United States.

16.

**Defendant U.S. Immigration and Customs Enforcement ("ICE")** is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

17.

Pleading in the alternative, **Defendant United States of America** receives

bond payments from Plaintiff Statewide (or co-obligor surety), pursuant to a

bond breach, through the U.S. Department of Treasury.

18.

**Defendant Kevin McAleenan** is sued in his individual capacity as Acting

Secretary of U.S. Department of Homeland Security ("DHS").

19.

**Defendant Matthew T. Albence**, is sued in his individual capacity as

Acting Director of U.S. Immigration and Customs Enforcement ("ICE").

20.

**Defendant William Barr** is sued in his individual capacity as Attorney

General of the United States. At all times relevant to this Complaint, he had

responsibility for the administration of the immigration laws pursuant to 8

U.S.C. § 1103 and oversaw the Executive Office of Immigration Review.

**RELEVANT FACTS**

**A. The bonds at issue in this case**

21.

Between December 2018 and April 2019, Defendants declared in breach 18

immigration bonds for which Plaintiff was an obligor, resulting in bond breach

invoices of over $215,000. See (Exhibit 1, *Redacted* Bond Breach Invoices.) The

invoices for these bond breaches are Invoice Nos. 1765028, 1778821, 1778823,

1778826, 1778827, 1778828, 1778829, 1778831, 1778832, 1778834, 1778835, 1778836,

1778839, 1778840, 1778843, 1778844, and 1778845.

22.

Plaintiff Statewide timely appealed each bond breach to the AAO, arguing,

*inter alia*, that the bond breaches were improperly issued because the breaches

rested on improper NTAs and NPAs in violation of due process and the APA, as

more specifically described in this Complaint.

23.

Defendants dismissed the appeals on the merits and made each bond

breach a final order on August 13, 14, and 16, 2019. Defendants then demanded

payment for these bond breaches. In some cases, Defendants issued invoices

***prior*** to issuing a decision on Plaintiff's appeal.

**B.  Bonding Process**

24.

Plaintiff Statewide is a bonding company, issuing immigration bonds on

behalf of Treasury licensed surety companies.

25.

The bonds at issue are "posted as security for performance and fulfillment of the bonded immigrant's obligations to the government. An acceptable surety company or an entity or individual who deposits United States bonds, notes, or cash may execute the bond as surety." Plaintiff Statewide is a bonding agent of such surety companies and thus as the obligor, along with a co-obligor, "guarantees the performance of the conditions of the bond."

26.

Before Nexus Services came along, immigrants in jail, who couldn't pay their full bond, were stuck. In fact, in order for an immigrant to be released from detention, said person had to pay one hundred percent of their determined bond. That changes under Nexus' innovative program, providing immigrants, who have not had their rights adjudicated, the opportunity to be released from imprisonment.

27.

Nexus guarantees the performance on the bonds and payment in the event of any breach. In order to achieve its successes, Nexus runs a monitoring and assistance program providing for subject immigrants.

28.

The bond's guaranty is secured by the amount of the bond.

29.

The bonding company in this case, Statewide, under the subject bond framework is an obligor, and it is subject to demands to cease writing business if the immigrant fails to make *statutorily and lawfully adequate* court appearances.

## C. The Defendants' course of conduct, from NTA through NPA, that is harming the Plaintiff

### i. The Defective NTA

30.

An NTA is a notice to appear that is given to the immigrant once the Plaintiff has entered into a bond agreement with the subject immigrant.

31.

This case only deals with persons/immigrants who are Nexus Program Participants, who have entered into bond agreements with Statewide, thereby making Donovan an indemnitor to the subject agreements on behalf of Nexus Services.

32.

A breach of bond occurs when an immigrant—in this case a Nexus Program Participant—fails to make a *statutorily and lawfully adequate* court appearance.

33.

The starting point for whether an immigrant fails to make a *statutorily and lawful* court appearance is the Notice of Appearance, NTA.

34.

The NTA is required to state the time, date, and place with respect to the immigrant's appearance in court.

35.

The NTAs at issue in this case are issued pursuant to 8 U.S.C.A. § 1229, which requires the NTA given to the subject immigrant, prior to or at the time of their release on bond, to contain a specific time and place with respect to making a court appearance.

36.

The NTA is given to the immigrant by Defendants upon determination that the immigrant will be released on bond and prior to or at the time of said release.

37.

The NTAs at issue in this case do not contain a time and date, and the majority do not contain a place, with respect to where the immigrant client is supposed to appear in court.

38.

At the time the immigrant is given his or her NTA by Defendants, a copy of that NTA is not sent to the obligor, in this case Statewide, nor is a copy of the subject NTA sent to Nexus Services, who indemnifies.

39.

The one time the Defendants can ensure that a subject immigrant being released on bond receives an NTA with a specified time and location to appear in court is prior to, or at the time of, release on bond—but Defendants have engaged in a custom and practice of failing to ensure a time and place at this significant moment.

40.

Defendants admit that "Federal law shall apply to the interpretation of the bond, and its terms shall be strictly construed."

41.

The subject NTA is an integral part of the subject bond agreements in this case because the NTA is supposed to place the subject immigrant on notice of exactly when and where to appear for court—and if the immigrant fails to appear, hundreds of bonds are breached as a result.

42.

Federal statutes and case law require the NTA given to the subject immigrants (prior to, or at the time of, being released on bond) to contain a specific time, date, and place with respect to court appearances the immigrants must attend. See Pereira v. Sessions, 138 S. Ct. 2105, 2107 (2018); see 8 U.S.C.A. § 1229.

43.

As a matter of fact, case law that governs the bond agreements at issue in this case states that a bond agreement is strictly construed against the drafter of the agreement; the drafter of the bond agreements at issue in this case is Defendants.

44.

Many times, after receiving the initial NTA at the time of posting bond and being released, the subject immigrant moves to different locations throughout the United States.

45.

After receiving the initial NTA prior to posting bond and being released, on occasion, the subject immigrant, who is a Program Participant, engages in conduct that makes it substantially harder for Nexus to find said Program Participant.

46.

Once the immigrant client fails to appear, a breach of bond occurs and thus Plaintiff is subject to significant monetary penalties.

### ii. The Defective NPA

47.

After the initial failure to appear, mindful that neither Plaintiff nor its indemnifier receive a copy of the subject NTA prior to the initial breach —(a notice that doesn't contain a date, time, or location), Defendant DHS sends Plaintiff Statewide (or co-obligor under the bond agreement) a 'demand to produce the alien' ("Notice to Produce" or "NPA").

48.

The Notice to Produce contains a time, date and location to produce the alien, and this notice represents the very first time the Plaintiff received any documentation from the Defendants regarding both a specific time and location with respect to the subject immigrants' mandatory appearance.

49.

Relevantly, regarding the subject immigrants at issue in this case, on occasions, after failing to receive an NTA upon being released from detention on bond, that contains a specific time and location to appear, the same immigrants never receive subsequent notice of a specific time/date, and location to appear.

50.

Many times, Plaintiff received the notice to produce within just a few days of the specific time and location to produce the subject immigrant (***just 9 days***, for example, regarding one bond at issue in this case, and often just two weeks). On more than one occasion, regarding other bonds not at issue in this case, these NPAs have been received **after** the subject immigrant was to be produced.

51.

Giving Plaintiff just a few days to track down a missing person within the vast territorial region of the United States is absolutely unreasonable and causes Plaintiff to endure increased reputational/business harm because of significant increases in fail rates. Less than 30 days is inadequate notice under due process law.

52.

There is no evidence that each immigrant received supplemental notice, after failing to receive the subject NTA without a time and place for compliance, unless said immigrant appears based on the supplemental notice.

53.

Program participants only receive a copy of the original NTA, which does not contain a time and date, and many times not a place, regarding compliance.

54.

Plaintiff does not receive a copy of any supplemental notice sent by Defendants to the subject bonded immigrant, and if it does receive a copy of said supplemental notice, Plaintiff receives it after the subject bonded immigrant has breached his or her bond by failing to appear.

### iii.  The complete course of conduct causing Plaintiff's injuries

55.

In summary, the Defendants' complete course of conduct causes Plaintiff to be unable to abide by the terms of the bond agreements entered into with the Defendants. First, the Defendants issue defective NTAs that do not advise the subject immigrant of when and where to appear, NTAs that are frequently never supplemented. Then the Defendants provide the Plaintiff with NPAs that give them less than 30 days to produce the subject immigrant, or have the bond be breached. As a result of the short notice, the Plaintiff has no reasonable opportunity to comply or be heard. As a result, the bonds are declared breached. There is simply no adequate due process under the law.

### D. The harms caused by the breach

56.

In order to understand the harm caused by these breached bonds, a brief restatement of the relationships of the players is necessary. Plaintiff Statewide is

a bonding companies issuing immigration bonds on behalf of Treasury-licensed surety companies. Nexus Services, in an effort to permit detained immigrants the ability to obtain freedom pending their case, guarantees the subject immigrants' compliance with the terms of these bonds through a monitoring and assistance program. Additionally, Nexus Services, by and through its President and CEO Mike Donovan, indemnifies the bonding companies for the costs of the breach of any immigration bond.

57.

Once a subject immigrant has failed to appear pursuant to a defective NTA, the Defendants default the bond and issue the NPA, with little or no opportunity for the Plaintiff to comply.

58.

The Plaintiff, having been given no reasonable opportunity to comply, fails to produce the subject immigrant and the Defendants declare the bonds in breach. Upon this declared breach, the obligor, Statewide, is required to pay tens of thousands of dollars to the Defendants. But going well beyond money, once the bond is breached, the fail rates increase for Plaintiff, and this makes it impossible to secure and continue relationships with bond surety companies. Inevitably, Plaintiff will be forced to discontinue its immigration bond businesses.

59.

Immigration bonds may only be issued by sureties that are approved by the Treasury. Should Treasury determine that a surety company is no longer satisfactory, they can then revoke that company's authorization to issue bonds, essentially ending its business.

60.

This risk means that any bonding agent that suffers an increased fail rate on their bonds, which is the number of bonds that are breached whether paid or not, suffers a reputational harm with these sureties.  The rate of failure of the bonds, whether the breach cost is paid or not, increases the risk that such surety companies face in issuing permitting bonding companies to bonds; i.e. the risk of the loss of their Treasury approval. As such, these fail rates are tracked and monitored.

61.

Statewide suffers these reputational harms for every bond declared in breach. Each time, Statewide's fail rates go up, endangering its relationship with the sureties.

62.

In short, if the Defendants are permitted to continue their course of action with the defective NTAs and NPAs, Plaintiff will continue to suffer financial and

economic harms in the costs of breach payments, reputational harm in the increase in fail rates that are detrimental to the Plaintiff's business relationships with the Treasury approved sureties, and inevitably cease to be able to operate entirely.

## CAUSES OF ACTION

### COUNT I
### Claim for Declaratory Relief
### for violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(C), by disregarding the requirements of, *inter alia*, 8 U.S.C. § 1229
*(Against all Defendants in their Official Capacities)*

63.

Plaintiff hereby incorporates the preceding factual paragraphs, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

64.

Based on all the incorporated facts, the final agency action of (1) issuing an NTA that violated federal law by not having a specific time, date, and place regarding immigrant court appearance coupled with (2) providing an NPA permitting an inadequate amount of time to produce an alien regarding bond breaches was unlawful, unconstitutional, in excess of authority, and an abuse of authority, inter alia, under the APA.

65.

Based on the foregoing, the Plaintiff is entitled to Declaratory relief.

**COUNT II**
**Claim for Injunctive Relief**
**for violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §**
**706(2)(C), by disregarding the requirements of, *inter alia*,**
**8 U.S.C. § 1229**
*(Against McAleenan, Albence and Barr, in their individual capacities and all other*
*Defendants)*

66.

Plaintiff hereby incorporates the preceding factual paragraphs, and any

other paragraph this Court deems relevant, as repeated and realleged as though

fully set forth herein to support this Count.

67.

Based on all the facts to support this Count, this Court should enjoin the

Defendants from declaring bonds breached based on defective NTAs and

Notices to Produce Alien, until the substantive legal issues are resolved. The

injunctive relief sought serves the public interest. The balance of equities also

weighs in Plaintiff's favor, and as far as irreparable harm, Plaintiff's community

reputation and ability to contract with relevant businesses has suffered,

significantly.

## COUNT III
### Claim for Declaratory Relief
### for violation of the Plaintiff's Procedural Due Process Rights
### Protected by the Due Process Clause of the 5th Amendment of the Constitution
*(Against all Defendants in their Official Capacities)*

68.

Plaintiff hereby incorporates the preceding factual paragraphs, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

69.

Based on all the incorporated facts, the Defendants course of conduct in (1) issuing an NTA that violated federal law by not having a specific time, date, and place regarding immigrant court appearance coupled with (2) providing an NPA permitting an inadequate amount of time for the Plaintiff to produce an alien prior to declaring bonds breached deprived the Plaintiff of a meaningful opportunity to comply with the terms of the bond or be heard prior to the declaration of the bonds in breach. This declaration of the bonds in breach caused significant financial harms and contributed to the fail rates of the Plaintiff, damaging its reputation and relationships with necessary surety company partners without opportunity to be heard.

70.

Based on the foregoing, the Plaintiff is entitled to Declaratory relief.

**COUNT IV**
**Claim for Injunctive Relief**
**for violation of the Plaintiff's Procedural Due Process Rights**
**Protected by the Due Process Clause of the 5th Amendment of the Constitution**
*(Against McAleenan, Albence and Barr, in their individual capacities and all other*
*Defendants)*

71.

Plaintiff hereby incorporates the preceding factual paragraphs, and any

other paragraph this Court deems relevant, as repeated and realleged as though

fully set forth herein to support this Count.

72.

Based on all the facts to support this Count, this Court should enjoin the

Defendants from declaring bonds breached based on defective NTAs and

Notices to Produce Alien, until the substantive legal issues are resolved. The

injunctive relief sought serves the public interest. The balance of equities also

weighs in Plaintiff's favor, and as far as irreparable harm, Plaintiff's community

reputation and ability to contract with relevant businesses has suffered,

significantly.

**COUNT V**
**Claim for Declaratory Relief**
**for violation of the Plaintiff's Substantive Due Process Rights**
**protected by Due Process Clause 5th Amendment of the U.S. Constitution**
*(Against all Defendants in their Official Capacities)*

73.

Plaintiff hereby incorporates the preceding factual paragraphs, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

74.

Based on all the incorporated facts, the Defendants' course of conduct in (1) issuing an NTA that violated federal law by not having a specific time, date, and place regarding immigrant court appearance coupled with (2) providing an NPA permitting an inadequate amount of time for the Plaintiff to produce an alien prior to declaring bonds breached deprived the Plaintiff of a meaningful opportunity to comply with the terms of the bond or be heard prior to the declaration of the bonds in breach. This declaration of the bonds in breach deprived Plaintiff of a protected property or liberty interest in their monetary assets by causing significant financial harms and contributed to the fail rates of the Plaintiff, depriving Plaintiff of its property or liberty interest in its reputation and business relationships with necessary surety company partners without opportunity to be heard.

75.

Based on the foregoing, the Plaintiff is entitled to Declaratory relief.

## COUNT VI
## Claim for Injunctive Relief
## for violation of the Plaintiff's Substantive Due Process Rights
## protected by Due Process Clause 5th Amendment of the U.S. Constitution
*(Against McAleenan, Albence and Barr, in their individual capacities and all other Defendants)*

76.

Plaintiff hereby incorporates the preceding factual paragraphs, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

77.

Based on all the facts to support this Count, this Court should enjoin the Defendants from declaring bonds breached based on defective NTAs and Notices to Produce Alien, until the substantive legal issues are resolved. The injunctive relief sought serves the public interest. The balance of equities also weighs in Plaintiff's favor, and as far as irreparable harm, Plaintiff's community reputation and ability to contract with relevant businesses has suffered, significantly.

## COUNT VII
## Attorney's Fees

Based on the foregoing, Plaintiff is entitled to reasonable attorney's fees under all applicable laws, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter a judgment against Defendants and award the following relief:

A.     Order Defendants be enjoined from declaring bonds breached that were based on a course of action of presenting defective Notices to Appear and Notices to Produce Alien providing 30 days or less to comply, until the substantive legal issues in this Complaint are resolved;

B.     Enter judgment and declaratory judgment in favor of Plaintiff;

C.     Order Defendants to cancel all the subject outstanding invoices that were issued in violation of law;

D.     Award costs and attorneys' fees to Plaintiff; and

E.     Order all other relief that is just and proper.

Respectfully submitted this 18th day of December 2019,

/s/John M. Shoreman
John M. Shoreman (#407626)

**MCFADDEN & SHOREMAN, LLC**
1050 Connecticut Avenue, NW
Washington, DC 20036
202-772-3188/202-204-8610 FAX
jmshoreman@verizon.net
*Counsel for Plaintiff*